GREENBURY B. WILSON *vs.* GREENBURY B. WILSON, GAR-
NISHEE OF SAMUEL M. TINSLEY AND JOHN A. KEEDY.—
GREENBURY B. WILSON, GARNISHEE OF SAMUEL M. TINS-
LEY AND JOHN A. KEEDY, *vs.* GREENBURY B. WILSON.—
*December,* 1849.

The term "indebted," in the act of 1795, ch. 56, regulating the suing out of
attachments, is not to be construed in a technical or strict legal sense.

An attachment may issue on any demand arising *ex contractu,* where the
contract ascertains the amount of indebtedness, or fixes a standard so cer-
tain as to enable the plaintiff, by affidavit, to aver it, or the jury, by their
verdict, to ascertain and find it.

By the contract in this case, the defendants were to guarantee the inspection
of flour they were to deliver, and if it should not pass superfine, were to
make such deduction "as is customary between the different qualities of
flour in the place where the flour may be inspected." One thousand eight
hundred barrels were delivered, and did not pass superfine. HELD:

That this difference could be as easily ascertained as the value of goods sold,
where no price is fixed, and this contract may be the foundation of pro-
ceedings by attachment.

Cross-appeals from *Baltimore* county court.

This was an *attachment* sued out by the appellant, upon a
certain agreement referred to in the opinion of this court. The
appellant made oath, before the justice who issued the warrant,
"that *Samuel M. Tinsley* and *John A. Keedy,* merchants and
co-partners trading under the name of *S. M. Tinsley & Co.,*
are justly and *bona fide* indebted unto him, the said *Greenbury
B. Wilson,* a merchant trading under the name of *G. B. Wil-
son & Co.,* in the just and full sum of $900, over and above
all discounts, for a deduction of 50 cents per barrel on eighteen
hundred barrels of flour sold by said defendants to the said
plaintiff, under the agreement hereto attached, the said flour
not having passed inspection as superfine." The terms of the
agreement referred to, are sufficiently stated in the opinion of
this court. An *attachment* was issued, and returned "laid in
the hands of *Greenbury B. Wilson,* trading under the firm of
*G. B. Wilson & Co.*" The garnishee appeared to the *capias*

and pleaded *non assumpsit* and *nulla bona* of the defendants in his hands, upon which issues were joined.

In the course of the trial, and after evidence had been offered to the jury, which the opinion of this court renders it unnecessary to state, the defendants offered four prayers, one of which, only, the court (Le Grand, J.,) granted, viz: "That the plaintiff is not entitled to recover, because the claim in this case is for unliquidated damages, as shown in the proceedings in this case." The plaintiff excepted to the granting of this prayer, and the defendants excepted to the refusal to grant the other prayers, and both parties appealed to this court. The propriety of granting the above prayer, was the only question decided by this court, and a statement of the testimony and the other prayers is, therefore, unnecessary.

The cause was argued before Dorsey, C. J., Chambers, Spence, Magruder, and Frick, J.

By T. P. Scott, for *Wilson*, the plaintiff, and
By Mayer and Buchanan, for the defendants.

Spence, J., delivered the opinion of this court.

This was a proceeding by way of attachment in *Baltimore* county court.

The record states the proceeding as follows:

Be it remembered, that heretofore, to wit, on the twenty-first day of December, in the year of our Lord, one thousand eight hundred and forty-four, *Thomas Hanson Belt, Esqr.*, one of the justices of the State of *Maryland*, in and for the city of *Baltimore*, pursuant to an act of the General Assembly of *Maryland*, in such case made and provided, sent to the clerk of *Baltimore* county court here a certain affidavit made before him, with an agreement thereto annexed.

The agreement produced to the justice of the peace, by *Greenbury B. Wilson*, at the time of making the affidavit, among other stipulations, contains the following one:

"It is further understood, *Messrs. S. M. Tinsley & Co.* are

to. guarantee the inspection of the flour, and if the flour should not pass superfine, then the said *Wilson* is to furnish *Messrs. S. M. Tinsley & Co.* with the inspector's certificate of the qualities of the flour as passed by him, and *Messrs. S. M. Tinsley & Co.* are bound to make such reduction as is customary, between the different qualities of flour in the place where the flour may be inspected.''

Upon the affidavit of *Greenbury B. Wilson,* the justice of the peace issued his warrant to the clerk of *Baltimore* county court, to issue a writ of attachment, which the clerk accordingly did. The attachment was laid, and the garnishee appeared by counsel, and pleaded *non assumpsit* and *nulla bona,* and upon these pleas, issues were joined. After the evidence had been offered to the jury, several prayers were offered to the court, for instructions to the jury, by the defendant, all of which were refused by the court, but the following one:

''The plaintiff cannot recover, because his claim is for unliquidated damages.'' This instruction the county court gave, and the plaintiff excepted.

This instruction presents the only question for our decision in this case. That the term ''indebted,'' in the act of 1795, is not to be construed in a technical or strict legal sense, is manifest from its association and connection with the terms used in the same section. After directing that the creditor shall make oath that the debtor is *bona fide* indebted, &c., ''and at the same time producing the bond or bonds, bill or bills, protested bill or bills of exchange, promissory note or notes, or other instrument or instruments of writing, account or accounts, by which the said debtor is so indebted, the justice of the peace is authorised and required forthwith to issue his warrant to the clerk,'' &c.

The claim on which the justice issued his warrant, was presented to him at the time he awarded the warrant, and the question was, whether this demand arose *ex contractu,* and the the contract ascertained the amount of indebtedness? or was it susceptible of ascertainment by some standard fixed by the

contract itself, so certain as to enable the plaintiff by affidavit to aver it, or the jury, by their verdict, to ascertain and find it?

The contract was, that *Tinsley & Co.* were to guarantee the inspection of the flour which they were to deliver, and if it should not pass superfine, then said *Wilson* was to furnish *Tinsley & Co.* with the inspector's certificate of the flour, as passed by him, and *Tinsley & Co.* were to make such deduction as was customary between the different qualities of flour in the place where the flour might be inspected, and superfine flour. *Wilson* swore that the eighteen hundred barrels of flour did not pass superfine, and that the difference in the value of flour, according to the custom of the place where it was inspected, was fifty cents per barrel, and that the said *Tinsley & Co.* were *bona fide* indebted to the plaintiff in the just and full sum of $900, over and above all discounts. The standard was the difference in the value of the flour at the place where in was inspected, between flour superfine, and flour superfine bad. This was as easily ascertained as the value of goods sold, where no price was fixed as to value. The standard was so clearly ascertained by the contract itself, as to enable the plaintiff to aver it in his affidavit.

The court erred in their instruction to the jury, and the judgment is reversed, and procedendo awarded.

<div align="center">

JUDGMENT REVERSED, AND

PROCEDENDO AWARDED.