(Decided May 26th, 1865.)

---

CORBIN WARWICK *vs.* DANIEL CHASE and others, Garnishees of FRANCIS LE BRETON & Co.

ATTACHMENT ON WARRANT—RULE OF MEASURE OF DAMAGES IN: JURISDICTION: CONTRACT—CONSTRUCTION OF: PRESUMPTIONS: MOTION TO QUASH.—C. W., in *attachment on warrant*, charged Le B. & Co. with damages "for not selling and investing in a return cargo of coffee, a cargo of Richmond flour, shipped per bark Clara Haxall," from Richmond, Va., in September 1857, the amount of which he ascertained by a hypothetical account, purporting to show what would have been his profits had the proceeds of the flour been invested in a return cargo of coffee, and had the same been received by him at Richmond on the 20th of March 1858. Instructions in reference to said shipment were contained in four letters from the plaintiff to the defendants. The first says: "If you can sell the flour afloat at about $9.00 net, please do so before her arrival. If coffee, such as you sent me by her, can be put on board at 10 or 10¼ cents per pound, you may ship by her the proceeds of the flour. If not, remit me, in ster-

Warwick *vs.* Chase, *et al.*, Garns. of Le Breton & Co.

ling exchange." The next: "If you can return the proceeds in coffee, by her, of same quality as that you sent for me on her last voyage, to cost not over 10¾ cents per pound, on board, you will please do so. If not, remit me, in sterling exchange, for the proceeds." The next reduces the limit to 10 cents per pound for the coffee. The next to 9, and adds: "But I am in hopes the flour has been sold some time ago, and that you have remitted the proceeds to me as directed, in good sterling exchange." HELD:

1st. That the general rule in such cases is, that unliquidated damages, resulting from the violation of a contract, cannot be recovered by attachment, unless the contract affords a certain measure or standard for ascertaining the amount of damages, without the aid of inferences from extrinsic facts or circumstances.

2nd. That the contract in this case is one which the law presumes, and resting in presumption, it could not go beyond a simple undertaking to comply with the plaintiff's instructions.

3rd. That the claim of C. W. is substantially for lost profits on the ruling prices of coffee in the Richmond market at a certain date, and the account by which the amount of the claim is shown, assumes that the return voyage, both as to perils of the sea and time of completion, was at the risk of Le B. & Co., whereas all the risks and contingencies of the voyage were on C. W.

4th. That to have held the agents at Rio liable for damages, to be ascertained by the standard of market values at Richmond, it was not only essential that the vessel should have made the home voyage with safety, but that all the facts necessary to fix the standard should have occurred.

5th. To sustain the attachment in this case, it would be necessary that the standard for ascertaining the amount of damages claimed should not only appear, but that it should be fixed and certain, and in no degree dependent on facts either speculative or uncertain; whereas the particular measure insisted on is altogether hypothetical, the facts necessary to give it certainty are assumed, and it was impossible, from the nature of the case, for the appellant to fix upon the market value of any given day as the standard for ascertaining the amount of his claim,—and for the same reason he could not aver it.

6th. That the motion to quash the attachment in this case, was properly sustained.

APPEAL from the Superior Court of Baltimore city.

This was an *attachment on warrant*, issued at the instance of the appellant against F. Le Breton & Co., to recover $9,578.58 damages, claimed by the former from the latter, for alleged delay in selling a cargo of flour, and failure to invest the proceeds in a return cargo of coffee. The attach-

ment papers consist of a *pro forma* or *hypothetical* account, accompanied with the affidavit of the plaintiff, purporting to show what would have been his profits had the flour been sold to the best advantage, and the proceeds of sale applied to the purchase of a return cargo of coffee; a statement in writing, that the flour arrived in Rio on the 14th of November 1857, that it could and ought to have been sold prior to the 1st of February 1858, that the proceeds, if so sold, could have been invested in two thousand two hundred and twenty-six bags of coffee, which would have arrived in Richmond about the 20th of March 1858, and would, on that day, have realized a certain net profit, but that *sterling exchange* had been remitted *instead*, which realized a smaller amount.

Four letters from the plaintiff to the defendants, dated respectively the 8th, 16th and 29th of September, and the 6th of November, 1857, were also filed as part of the attachment papers. The first says: "If you can sell the flour afloat at about $9.00 net, please do so before her arrival. If coffee, such as you sent me by her, can be put on board at 10 or 10½ cents per pound, you may ship by her the proceeds of the flour. If not, remit me, in sterling exchange." The next: "If you can return the proceeds in coffee, by her, of same quality as that you sent for me on her last voyage, to cost not over 10½ cents per pound on board, you will please do so. If not, remit me in sterling exchange, for the proceeds." The next reduces the limit to 10 cents per pound for the coffee. The next to 9, and adds: "But I am in hopes the flour has been sold some time ago, and that you have remitted the proceeds to me as directed, in good sterling exchange."

The attachment was issued on the 10th day of September 1859, and laid in the hands of the garnishees, who, on the return day, appeared and pleaded *non assumpsit* and *nulla bona*. A *short note* accompanied the summons and attachment, and was set up at the Court House door, in the city of Baltimore. Subsequently, the garnishees moved to quash

the attachment, on the ground that it had issued on a claim for unliquidated damages, and for other errors apparent on the face of the proceedings. The motion was sustained, and this appeal was taken from the order quashing the attachment.

The cause was argued before BOWIE, C. J., and BARTOL, GOLDSBOROUGH, COCHRAN and WEISEL, J.

*Geo. W. Brown* and *F. W. Brune*, for the appellants, argued :

1st. That an attachment can be issued upon a claim for unliquidated damages. *Wilson vs. Wilson*, 8 *Gill*, 193.

2nd. That the claim of the plaintiff, as shown by his affidavit, and the annexed accounts and vouchers arose *ex contractu;* that the amount of damages for its breach, although not liquidated in the strict sense of the term, was yet susceptible of ascertainment by a standard fixed by the contract itself, and so certain as to enable the plaintiff by affidavit to aver it, and the jury by their verdict to ascertain it, and that the plaintiff was therefore entitled to the remedy by attachment upon said claim as against the defendants, his non-resident debtors. *Wilson vs. Wilson*, 8 *Gill*, 194, 195. *Fisher vs. Consequa*, 2 *Wash. C. C. R.*, 385. *S. C. Browne Rep., Append.*, 28. *Redwood vs. Consequa, Ib.*, 62, 77. *Sergeant on Attachments*, 44. *Drake,* secs. 13 to 23. *Clarke's Ex'rs vs. Wilson*, 3 *Wash. C. C. R.*, 562. *Morris vs. Turner*, 5 *Penn. Law Journal*, 465. *Ward vs. Begg*, 18 *Barb.*, 139. *Garland vs. Cunningham,* 37 *Penn.*, 228. *Strock vs. Little*, 45 *Ib.*, 416. *Rollofsen vs. Hatch*, 3 *Mich.*, 279. *Evans Practice*, 90. *Petersdorff on Bail.*, secs. 16, 10 *Law Lib.*, 9.

3rd. That the affidavit in this suit does state a case and furnish grounds for issuing an attachment.

4th. That the plaintiff was not required to produce, with his affidavit, all the testimony by which his claim was to be established, but only to make a statement of a cause of

action, arising, *ex contractu*, upon which a declaration could be framed, claiming an amount of damages for its breach, sufficiently certain to be averred and ascertained, as stated in the second point. *Dawson vs. Browns*, 12 *G. & J.*, 54. *Bell vs. Cunningham*, 5 *Mass.*, 161, and 3 *Pet.* 69. 2 *Parsons on Cont.*, 460, 467. *Sedgwick on Damages*, 357. *Mayne on Dam.*, sec. 312, (95 *Law Lib.*, 278.) *Williamson vs. Dillon*, 1 *H. & G.*, 464, 465.

*John H. Thomas* and *S. Teakle Wallis*, for the appellees:

The garnishees will contend, that the attachment was properly quashed, for the following reasons, viz :

1st. The claim was for unliquidated damages, not the subject of an attachment. An attachment will only lie on a claim arising, *ex contractu*, where the contract itself furnishes a fixed or certain standard, independently of all contingencies, enabling the plaintiff to swear to a precise indebtedness. Act of 1795, ch. 56. *Wilson vs. Wilson*, 8 *Gill*, 192. *Drake on Attachment*, secs. 20 to 35 *inclusive*. *Clarke's Ex'rs vs. Wilson*, 3 *Wash. C. C. R.*, 560. *Hazard vs. Jordan*, 12 *Ala.*, 180. *Jeffry vs. Wooley*, 5 *Halsted, N. J.*, 123. *Cheddick vs. Marsh*, 1 *Zabriskie*, 463. *Hay vs. Brown*, 1 *Harrison, N. J.*, 157.

2nd. The appellants' claim depends upon the contingencies, whether the cargo of flour could have been sold afloat, on or before its arrival, for the prescribed price, whether the proceeds could have been invested in coffee of the desired kind and quality, within the prescribed limits, whether the return cargo would have arrived in Richmond, at the time supposed, or at all, and whether it could have been there sold, at a price which would have realized the net profit supposed.

3rd. Damages depending on such a chain of contingencies, were too speculative and uncertain to constitute a claim which can be used as a set off, or for any other purpose for which a certain, net conjectural claim is necessary. *Sedgwick on the Measure of Damages*, 428. *Butts vs. Collins*. 13 *Wend.*, 139.

Warwick *vs.* Chase, *et al.*, Garns. of Le Breton & Co.

4. An attaching creditor is required to file an actual account, showing an actual indebtedness, not a *pro forma* or hypothetical account, based on a number of contingencies, either of which might or might not have happened, and the failure of either of which, not only would have altered the account, but might have made the alleged creditor an actual debtor.

5th. There is no allegation that the defendants contracted to buy coffee. The sale of the flour consigned to them, implies no other contract than to account for the proceeds. It no more implied a contract to invest them in coffee, than the receipt and appropriation by the plaintiffs, of the sterling bill, amounted to a ratification of the investment in that security.

6th. The affidavit and accompanying attachment papers, do not show a debt, or any facts from which the Court can infer one. The letters of instruction direct a return cargo of coffee to be shipped by the Bark Clara Haxall, if her outward cargo of flour can be sold afloat from the vessel, on or before her arrival. There is no allegation that the outward cargo could have been so sold, that the vessel ever returned, so that a return cargo might have been shipped by her, or that the defendants contracted to obey the instructions. This is a defect of averment, not of proof, and is as much a ground for quashing the attachment, as the absence of the necessary averment in reference to the residence of the defendants, or any other error apparent on the face of the procedings.

Cochran, J., delivered the opinion of this Court:

This attachment was issued by the appellant, to recover the sum of $9,578.58, damages claimed to be due from Francis Le Breton & Co., his agents and consignees, at Rio de Janeiro, for their delay in selling a shipment of flour, and failure to invest the proceeds in a return cargo of coffee. The motion to quash proceeds on the ground, that the damages claimed are not liquidated, and there-

fore not recoverable by attachment. It is contended, how-
ever, on the other side, that the claim arose, *ex contractu,*
and although for damages, not liquidated according to the
strict sense of the term, yet so far susceptible of ascertain-
ment by a standard fixed by the contract, that the amount
could be averred in the affidavit, as well as found by the
jury. This proposition presents the material question for
consideration in this case.

The appellant charges Le Breton & Co., with damages
*"for not selling and investing in a return cargo of coffee, a
cargo of Richmond flour, shipped per Bark Clara Haxall,"*
from Richmond, Va., in September 1857, the amount of
which he ascertains by a hypothetical account stated, to
show what profits would have been his, had the proceeds of
the flour been invested in a return cargo of coffee, and the
same received by him at Richmond, by the 20th March
1858. The claim is substantially for lost profits on the
ruling prices of coffee in the Richmond market at that date,
and the account by which the amount of the claim is shown,
necessarily assumes, that the return voyage, both as to
perils of the sea and time of completion, was at the risk of
Le Breton & Co. We must remark, however, that no such
undertaking on their part, can be found from any of the
papers filed with the affidavit in this case. On the con-
trary, all the risks and contingencies of the proposed ad-
venture were on the appellant; and to subject his agents
at Rio to liability for damages, to be ascertained by the
standard of market values at Richmond, it was not only
essential that the vessel should have made the home voyage
with safety, but that all the facts necessary to fix the stand-
ard should have occurred. The duration of a voyage, until
completed, is uncertain, and it was impossible in the nature
of things, for the appellant to fix any certain date at which
the Clara Haxall would have reached Richmond, had she
received his return cargo according to his first letter of in-
structions; and of course, equally impossible for him to fix
the standard of his damages by the prices then ruling in

that market.  In an ordinary suit for damages, where the rule adopted in *Bell vs. Cunningham*, 3 *Peters*, 69, might be applied, we do not doubt that a jury, looking to all the facts and circumstances likely to affect the duration of a proposed voyage, might find a day at which such a voyage, if broken up, should have been completed, and also find a market price then ruling, that could be applied as a standard or measure of the damages sustained.  But that is not the case here.  To sustain this attachment, it is necessary that the standard for ascertaining the amount of damages claimed, should not only appear, but that it should be fixed and certain, and in no degree dependant on facts either speculative or uncertain.  The particular measure insisted on, as we have endeavored to show, is altogether hypothetical. Facts necessary to give it certainty are assumed, and it was impossible, from the nature of the case, for the appellant to fix upon the market value of any given day as the true standard for ascertaining the amount of his claim; and for that reason he could not aver it.

But conceding this standard, in legal contemplation, to be the true one, does the alleged contract so indicate it as to warrant the statement of a claim recoverable by attachment?  The alleged default of Le Breton & Co., was in not selling and investing in a return cargo of coffee, a cargo of flour, according to instructions forwarded by the appellant.  No express contract on their part is shown, and their liability depends, as a matter of course, on the contract, which the law presumes from the nature of the transaction, and the general relation of the parties.  All the law could presume in such a case, was a simple undertaking to comply with the instructions given, and that, without more or less, constitutes the contract, with which we have to deal.  The general rule is, that unliquidated damages, resulting from the violation of a contract, cannot be recovered by attachment, unless the contract affords a certain measure or standard for ascertaining the amount of the damages; and the cases cited in the

21    v.23.

course of the argument, as authorities on this point, show that the standard should be a subject matter of the contract. In *Fisher vs. Consequa*, 2 *Wash.*, 382, the contract was, to deliver teas of a certain quality, and on failure to do so, to pay the difference between teas of such a quality and such as should be delivered. There the standard was fixed by the contract; and so, also, in *Wilson vs. Wilson*, 8 *Gill*, 192. In the case of *Clark vs. Wilson*, 3 *Wash.*, 560, where an attachment had issued to recover damages for the non-performance of the stipulations of a charter party, the Court, after reviewing the case of *Fisher & Consequa*, dissolved the attachment, because the contract did not show a standard by which the damages, consequent upon its violation, were to be ascertained. As we have said, the proposition generally stated is, that the standard must be shown by the contract, without the aid of inferences from extrinsic facts or circumstances. The question then, whether the contract in this case fixes or shows a standard for ascertaining the damages claimed, admits of but one answer. The contract is one which the law presumes, and, resting in presumption, it could not go beyond a simple undertaking to comply with the appellant's instructions.

We think on the whole, that the motion to quash was properly sustained by the Court below, and shall therefore affirm the judgment.

*Judgment affirmed.*

(Decided May 26th, 1865.)