**162** *WILLIAM T. SMITHSON and William F. Owens *v.* THE UNITED STATES TELEGRAPH COMPANY.

*Decided June 19th, 1868.*

CONTRACTS ; BREACH ; DAMAGES. LIABILITY OF TELEGRAPH COMPANIES. APPEALS ONLY FROM FINAL ORDERS.

An order overruling a motion to enter a judgment by default, is a mere interlocutory judgment, leaving the case upon the docket for final trial and adjudication and determining nothing final between the parties. (a)     p. 165

It is well settled that no appeal can be prosecuted until a decision has been had in the court below, which finally concludes the rights of the parties to the action.     p. 165

A suit against a telegraph company for damages sustained by the failure of the company to transmit a dispatch ordering a sale of gold, is a claim for unliquidated damages, and not embraced within the meaning of Art. 4, secs. 166-169, of the Code of Pub. Local Laws, which relate only to an ascertained amount of liquidated indebtedness, which the

---

(a) See *Hazlehurst v. Morris,* 28 Md. 67, note (a); *Phillips v. Pearson,* 27 Md. 242-243, note (a). As to special damages for the breach of contracts, see *P., W. & B. R. R. Co. v. Lehman,* 56 Md. 234; *Ellicott v. Lamborne,* 2 Md. 131.

plaintiff can properly and safely swear the defendant owes to him. (b)
pp. 165-166

Where a precise sum for damages is not agreed upon, and is not of the essence of the contract between the parties, the quantum of damages is unliquidated, and it is for a jury to assess them; but where the precise sum has been fixed and agreed upon by the parties, that sum is the ascertained and liquidated damages, and the jury must assess that amount, no more and no less. (c)
p. 166

Appeal from the Court of Common Pleas.

This was an action instituted in the Court of Common Pleas by the appellants, against the appellee, to recover damages for the breach of a contract to telegraph and deliver a message from the appellants, in Baltimore, to their correspondents, Manley & Company, in New York, directing the latter to sell ten thousand dollars of gold for and on account of the appellants. The declaration alleges that the message would, immediately on the receipt thereof, have been complied with by Manley & Company, but that the appellee wholly neglected to telegraph and deliver said message, and *that as soon as **163** the appellants became aware thereof, they caused ten thousand dollars of gold to be sold for and on their account, but that in the interval between the time when the message ought to have been received and acted on, and that at which they so sold, gold had greatly declined in value, and the appellants obtained a much smaller amount therefor than they would have obtained through Manley & Company, if the message had been telegraphed and delivered by the appellee, as it had contracted to do. The declaration was filed at the time of the institution of the suit, and with it, the following account verified by affidavit:

United States Telegraph Company, Dr.
To W. T. Smithson & Company.
Difference between the price for which Manley & Company

---

(b)   See *McAlister v. Eichengreen*, 34 Md. 56; *Knickerbocker Life Ins. Co. v. Hoeske*, 32 Md. 322. As to the liability of the American District Telegraph Company for the negligence of its messengers, see *Am. Dist. Tel. Co. v. Walker*, 72 Md. 454.

(c)   As to liquidated damages, see *Geiger v. W. Md. R. R.*, 41 Md. 4; *Penn. R. R. Co. v. Reuchert*, 58 Md. 261; *Willson v. Baltimore*, 83 Md. 203; for note on damages for breach of contract, see *Abbott v. Gatch*, 13 Md. 315, note (e).

would have sold $10,000 of gold for and on account of the said W. T. Smithson & Company, if said Telegraph Company had telegraphed a message in accordance with its contract, and the price obtained by said Smithson & Company therefore, being the damages resulting from the violation of said contract, viz:

Price for which said gold would have been sold
by said Manley & Company, at $132¾ . . . . . $13,275 00
Price for which it did afterwards sell, at $129 7-16,   12,943 75

                                                      $331 25

The writ was returnable to the second Monday of January, 1866. The appellee having been summoned, appeared by counsel, and on the 23rd of January, filed several pleas, but no oath was made, to prevent the appellants from being entitled to their judgment, under the provisions of the Code. At the February rule day, which was that next succeeding the appearance of the appellee, the appellants filed their motion, in writing, asking for a judgment, because said pleas were not verified by affidavit. The court overruled the motion, and refused to enter the judgment, and the appellants appealed from the order so doing.

**164**    *The cause was argued on the merits and on a motion to dismiss the appeal, before Bartol, C. J., Nelson, Stewart, and Alvey, JJ.

*John H. Thomas,* for the appellants :

The express provisions of the Code made it the duty of the court to render the judgment asked for, and to assess the damages.  Code of Pub. Local Laws, Art. 4, secs. 166-169.

The language of the Code is different from that of the Act of 1858, ch. 323, which was previously in force, and which applied only to cases in which the sum to be recovered was ascertained by the contract or fixed by law. A plaintiff, in such a case as this, would have been entitled to his judgment, even under the Act of 1858, when it was in force. The measure of damages was fixed by law. The default ascertained the principal of the sum claimed to be due. The court, under that Act, would have rendered judgment for the principal; but having then no power to assess damages, could not include the

interest. This difficulty is now removed by the Code, and the judgment ought to have been rendered for the amount of the account and interest. *Munnikhuysen v. Dorsett,* 2 H. & G. 374; *Boteler v. State,* 7 G. & J. 109; *Keirle v. Shriver,* 11 G. & J. 405; *Wilson v. Wilson,* 8 Gill, 192; *Birney v. N. Y. & Wash. Tel. Co.* 18 Md. 341; *Mailhouse v. Inloes,* 18 Md. 328; Code of Pub. Local Laws, Art. 4, sec. 169.

The provisions of the Code applied to the Court of Common Pleas. Code of Pub. Local Laws, Art. 4, sec. 173.

This court has power, on reversing the judgment, to give such judgment as the court below ought to have given, and ought, therefore, to give judgment for the amount of the account and interest. Code of Pub. Gen. Laws, Art. 5, sec. 14; *Severs v. Clement,* 28 Md. 426.

*Levin Gale,* for the appellee:

The appeal should be dismissed because there has been no final judgment, and therefore nothing in this case from which *an appeal could be taken. *Carroll v. Bowie,* 7 Gill, 35; **165** *Boteler v. State,* 7 G. & J. 112.

The case set forth in the affidavit was not a case of debt within the purview of the Act of 1864, ch. 6.

The account does not show a case of indebtedness, but, on its face, presents a claim for damages. *Clark v. Wilson,* 3 Wash. C. C. 560; *Fisher v. Consequa,* 2 Wash. C. C. 382.

Nelson, J., delivered the opinion of the court.

At the argument of this cause, after hearing the counsel for the appellant, the court declined to hear the appellee's counsel, and announced as the opinion of a majority of the court, that the motion to dismiss the appeal ought to prevail, and passed an order accordingly. The whole court was also of opinion that the account filed in the cause, upon which the suit was brought, was not a debt within the purview of Art. 4, secs. 166-169 of the Code of Public Local Laws of the City of Baltimore. We now proceed to state more fully the grounds of that opinion. The judgment rendered by the court below was a mere interlocutory judgment, leaving the case upon the docket for final trial and adjudication as it stood before the judgment

complained of, and determining nothing final between the parties.

It is well settled that no appeal can be prosecuted in this court, until a final decision has been had in the court below, which concludes the rights of the parties to the action; the decision in this case certainly did not do so, for the case still stands for trial on the docket of the court below.

In regard to the second question, we regard the plaintiffs' claim as unliquidated damages, and not embraced within the meaning of the sections of the Code referred to. Sec. 168, we think, makes it clear that the three preceding sections, referred to on the plaintiffs' brief, relate only to an ascertained amount of liquidated indebtedness, which the plaintiff can properly and

**166** safely swear the defendant owes *to him. Is this such a claim? Is the claim in this case an ascertained amount of liquidated indebtedness to which a plaintiff can properly swear? We think it is not. The rule upon the subject of liquidated and unliquidated damages we take to be, that where a precise sum for damages is not agreed upon, and is not of the essence of the contract between the parties, the *quantum* of damages is· unliquidated, and it is for a jury to assess them; but where the precise sum has been fixed and agreed upon by the parties, that sum is the ascertained and liquidated damages, and the jury must assess that amount, no more and no less. The case before us, we think, is embraced in the first branch of the rule, the case of the sale of flour, *Wilson v. Wilson,* 8 Gill, 192, is within the second branch. In the case before us, there were no damages agreed upon between the parties, there was not even a penalty named, and the only penalty for a breach of the contract, or for negligence in its performance, was what the law would raise and a jury assess according to the circumstances of the case. In *Wilson v. Wilson, supra,* the amount of the damages was fixed by the contract; or what was the same thing the contract furnished a standard by which they could be certainly ascertained. The contract was, that Tinsley & Co. were to guarantee the inspection of the flour which they were to deliver, and if it would not pass superfine, then Wilson was to furnish them with the inspector's certificate of the flour as passed by him, and Tinsley & Co. were to make such deductions as

was customary between the different qualities of flour in the place where the flour might be inspected and superfine flour.

It was shown that the flour did not pass superfine, and that the difference in the value of flour, according to the custom of the place where it was inspected, was fifty cents per barrel. The court, in speaking of the damages in that case, say: "They were as easily ascertained as the value of goods sold where no price was fixed as value. The standard was so clearly ascertained by the *contract itself,* as to enable the *plaintiff **167*** to aver it in his affidavit." There is, we think, a broad distinction between *Wilson v. Wilson,* and the case before us, and so far from sustaining the proposition of the plaintiff, as an authority against him. For, when the court say, " the standard was so clearly ascertained by the contract, as to enable the plaintiff to aver it in his affidavit, the converse must be true, and if it had not been so clearly ascertained in the contract itself, he would not have averred it in his affidavit; in other words, had it not been of the essence of the contract, the damages would have been unliquidated, and not an account proper to be sworn to. Wilson could have charged no greater sum than fifty cents per barrel; that was the amount of damages agreed and fixed upon so soon as the inspector should certify. Tinsley & Co. could claim to pay no less, and if a jury had been called, they could have assessed neither more nor less. The mode of ascertaining the amount was just as certainly fixed by the contract, so that there could be no difficulty in ascertaining the amount and reducing it to a certain sum by force of the contract. There could have been no circumstances adduced to alter the amount; the damages were, therefore, liquidated and ascertained, and the plaintiff might well swear to it in his account after he had proved the contract.

Not so in this case; no stipulation was made by the defendants that they, in the event of such and such a failure, would pay so much, to be ascertained from fixed data by some particular persons, the law fixed the contract between these parties. The defendants were bailees, not common carriers, and not to be held to the rigid and strict accountability of common carriers; they might, therefore, have had many defenses to offer in proof, either to exonerate them from liability altogether, or to mitigate the damages ; surely damages, which may be gotten rid of

altogether or mitigated by proof of circumstances, cannot be liquidated and made of so certain an ascertainment as to justify a plaintiff in swearing to them as a certain and just amount due.

**168** We, therefore, think the *account in this case does not show a case of indebtedness within the law referred to,·but that it is a claim for unliquidated damages.

It is proper that this case should be brought up in the court below by regular continuances.

*Appeal dismissed.*