Mr. Justice Bradley
delivered the opinion of the court:
This case is here upon thev plaintiffs’ appeal from the order of the Circuit Court quashing a writ of attachment and garnishment. The action was brought against the defendant, a foreign corporation. Service of summons was not obtained upon it in any way, and a writ of attachment and garnishment was issued based upon affidavits filed subsequent to the filing of the declaration. That writ of attachment and garnishment was served upon Havenner & Davis, co-partners, doing business in the District of Columbia. A motion to quash the writ was filed by the garnishees, based substantially upon two grounds, though nine grounds are named. The first is, ‘ ‘ Because the *595 declaration and supporting affidavits show that this is an action sounding in unliquidated damages, on account of alleged breach of contract by defendant, and not an action upon a liquidated demand.” The second is, “ Because it is not alleged that any contract was executed and subscribed by and between plaintiffs and defendant, and because the affidavits whi.ch are the basis of the writ, are insufficient in law.”
It is necessary to read the declaration, as well as the affidavits upon which the writ issued, in order to get at the substantial points involved in this motion. The declaration alleges “That, in July, 1890, the plaintiffs were about to enter upon the business of retail dealers in boots and shoes at Washington, and proposed to open a store or place of business on September 1, following; that defendant was a manufacturer of shoes; and by its officers.was informed of plaintiffs’ purposes, and well knew the same. And thereupon, and being so informed, defendant undertook and agreed to and with the plaintiffs that it would manufacture for plaintiff, a great quantity of boots and shoes, to wit, one thousand pair of various sizes, qualities, prices and descriptions agreed upon, and-deliver them within a reasonable time, to wit, the aforesaid 1st day of September, 1890; and the plaintiffs agreed to pay for the same. But defendant did not deliver said goods at any time; and, by reason of neglect and failure of defendant to deliver said goods according to promise, plaintiffs could not and did not open their place of business on the 1st day of September, 1890, nor for a long period of time thereafter, to' wit, until September 15, 1890, and were put to great expense in the procurement of other goods in the place of those so agreed by the ■ defendant to be delivered, and were unable to procure other and suitable goods until about December 1. 1890, and thereby were unable to supply the demands upon them, made by their customers, and lost great profits which would have come to them in the sale of such goods, and were otherwise hindered, delayed and embarrased and annoyed in their said business, to the great damage of the plaintiffs, to wit, $3,000.
And plaintiffs claim $1,500 damages, etc.
*596 The principal affidavit in support of this writ was made by I/uther B. Snyder, one of the plaintiffs, who says, substantially, that the plaintiffs made a contract with the defendant to deliver to them a large quantity of boots and shoes before the ist day of September, 1890, and that defendant did not deliver the goods or any part thereof, nor give any reasonable excuse for failing so to do. That the refusal was not communicated to the firm of the plaintiffs until it was too late to purchase other goods so as to open their store on the ist day of September and they were unable to supply the place of the goods contracted for, until about the ist day of January, 1891, and that they did not open their store until September 15, 1890, and wholly lost the rent paid by them for the store-room up to that time, which was at the rate of $150 per month, and they lost in great part the use of the store until December 1. They were also obliged to purchase other goods from other makers, paying higher prices, and they lost indifference of prices about $195.75. They also lost the wages of the employee who was engaged, and sustained other losses and damages traceable directly to said breach of contract.” Then he states that he verily believes that his firm has a just right to recover for the breach of contract the amount named in the declaration, viz: $1,500. The supporting affidavit is by one Willie M. Snyder, who says: “I am and have been since October ist, 1890, a clerk in the employ of Hoover & Snyder, plaintiffs in cause No. 31,190, at Daw, against Hathaway, Soule & Harrington. I am a brother of Duther P. Snyder, of said firm, and am familiar with said firm’s cause of action in said case.
“I know that in July, 1890, said Hathaway, Soule & Harrington, accepted in writing an order for the manufacture and delivery to said Hoover & Snyder of a quantity of shoes (being more than six hundred pairs) and agreed to deliver the sa'me at Washington, D. C., for certain prices specified in said writing. I know that said Hoover & Snyder expected to open their store for business on September 1, 1890, and expected to have the goods so contracted for as a large part of their stock in trade. I saw said writing a short time after it was made. *597 Said goods were not delivered, but before September Hoover & Snyder were notified by defendants that they could not have the goods.
“Hoover & Snyder did not open their store until September 15, 1890, and this was for want of the necessary stock in trade, as I believe. I also know that they were obliged to pay higher prices for goods bought to take the place of those contracted to be delivered by defendant, and went to expense in traveling, &c., to place orders for goods to take their place, and even then they were unable to procure such goods until long after September 1, 1890, and their trade suffered accordingly. Said firm also suffered losses of other kinds because of such breach, and were hindered, delayed and damaged in their business until about the 1st of January, 1891, by reason thereof.
“They have just right to recover damages from said Hathaway, Soule, & Harrington, as claimed in their declaration.’’
It is claimed in behalf of the garnishee, that the mesne process of attachment and garnishment will not lie for a cause of action of this indefinite character. It is claimed that the act of the Assembly of Maryland of 1795, is still in force in the District of Columbia; that under that act it is essential that there shall exist an indebtedness between the defendant and the plaintiff, either ascertained definitely by the contract or, ascertainable under the contract by some fixed standard which is named in the contract itself. That otherwise the claim is for unliquidated damages, and that it would be impossible to specify the amount due as required by that act. It is claimed on the other hand by the plaintiffs, that the measure of damages in this case is ascertained by a fixed Standard in law; that the plaintiffs are entitled to recover the difference between the price agreed to be paid and that paid for other goods, the rent of the store during the time they were unable to use it, and any other positive or direct loss resulting plainly from the breach of the contract. The principal question then is whether it is sufficient to show a case by the declaration, and the affidavits, in which the law has fixed certainly the right to recover damages, or whether it is *598 essential that the contract, which is the foundation of the action, shall fix some standard by which damages can be definitely ascertained. There can be no doubt that the act of Maryland of 1795 is in force in this District. It has been so expressly held in the case of Wallace, Elliott & Co. vs. Maroney, 6 Mackey, 221. The question involved in that case being the right of the actual owner to intervene in the proceedings and defend his property from condemnation under the attachment. The court say: “The provisions of our Revised Statutes were only designed to change the existing law and practice in the District, so as to authorize the clerk to issue the attachment without a previous warrant from a judge or justice, and to prescribe the formalities which should precede and follow the issue of the writ; but nothing in those sections deny any previous right of the owner existing in the District to intervene in the proceedings for the protection of his property.”
Now the act of Maryland provides ‘ ‘ That if any person whatsoever, not being a citizen of this State, and not residing therein, shall or may be indebted unto a citizen of this State, or of any other of the United States, or if any citizen of this State, indebted to another citizen thereof, shall actually run away and abscond or fly from justice, or secrete him or herself from his or her place of abode, with the -intent to evade the payment of his or her just debts, such creditor, may in either case, make application to any judge of the general court, justice of the county court, or justice of the peace; and on oath ¡.and affirmation of such creditor, made before any judge of the general court, justice of the county court, justice of the peace of this State, or before any judge of any other of the United States, that the said debtor is bona fide indebted to him or her in the sum of $-, over and above all discounts, and at the same time producing the bond or bonds, bill or bills, protest bill, or bills of exchange, promissory note or notes, or other instrument or instruments of writing, account or accounts, by which said debtor is so indebted,” and upon oath or affirmation as to the- non-residence of the debtor, etc., “said judge of the general, justice of the county *599 court or justice of the peace, shall be, and is hereby fujly authorized and required forthwith to issue his warrant to the clerk of the general or of the county court, as the case may require,” etc.
We are of opinion that the Act of June i, 1866, in force in this District, regulates merely the procedure for and after the issuing of the writ, and it leaves the character of the demands in actions at law upon which the writ of attachment may issue as it was theretofore under existing law, and that, if the Act of Maryland of 1795 requires that in order to justify the issuing of the writ of attachment, the amount due shall be directly ascertained by the contract, or that the standard upon which the amount may be computed shall be fixed by the contract, it is still essential in this District. This has been distinctly settled in the State of Maryland. Wilson vs. Wilson, 8 Gill., 192; Warwick vs. Chase, 23 Md., 154. In the case of Clark’s Executor vs. Wilson, 3 Wash. C. C., 500, Mr. Justice Washington, announcing the decision of the court, said (referring to the case of Fisher vs. Consequa, 2 Wash. C. C., 382): “The principle decided in that case was, that a demand arising ex contractu, the amount which was ascertained, or which was susceptible of ascertainment by some standard, referable to the contract itself, sufficiently certain to enable the plaintiff, by affidavit, to aver it or a jury to find it, might be the foundation of a proceeding by way of foreign attachmemt, without reference to the form of action, or the technical definition of debt, ‘the expression used in the law.’” And then he proceeded with the case under consideration, and said: /‘This, then, is a case in which unliquidated damages are demanded; in which the contract alleged as cause of action affords no rulé for ascertaining them; in which the amount is not and cannot, with propriety, be averred in the affidavit; and which is and must be altogether'uncertain until the jury have ascertained it, for which operation no definite rule can be presented to them. In our opinion, it has not one feature of resemblance to the case of Fisher vs. Consequa.
In the case of Warwick vs. Chase, the court refers to several *600 cases, and among others to the case of Wilson vs. Wilson, 8 Gill., 192, and says: “The general rule in such cases is, that unliquidated damages, resulting from a violation of contract, cannot be recovered by attachment unless the contract affords a certain measure or standard for ascertaining the amount of damages, without the aid of inferences from extrinsic facts or circumstances.”
In the case at bar the contract set up in the affidavits in support of the declaration and in the declaration itself is simply a contract to sell and deliver by a certain day certain goods. No standard is fixed by the contract by which the damages sustained for a breach of it can be ascertained. The statement of the contract itself, in the declaration and in the affidavits as well, is very indefinite. The affidavits do not show any specific amount of damage such as could be made the foundation for a writ of this character. Under the Act of 1866 the affidavits should be held insufficient to sustain the writ because of their indefiniteness. It is not necessary, however, to base the decison upon that ground. We are of opinion, that, inasmuch as this action is not brought to recover an ascertained indebtedness due under contract, but that the cause of action is breach of contract to deliver goods, and no Standard is fixed by the contract by which the amount of damages for its breach could be ascertained by computation, the'writ of attachment and garnishment was properly quashed by the court in special term, and its order should be affirmed; and it is so ordered.