# THE WESTMINSTER METAL AND FOUNDRY COMPANY

*vs.*

## ANDREW K. COFFMAN AND JOE BRENNER, TRADING AS THE RELIABLE JUNK COMPANY, USE OF THE MARYLAND SURETY AND TRUST COMPANY.

*Set-off*: *statutory defense; unliquidated damages not pleadable as set-off.*

Unliquidated damages can not be pleaded as set-off.*    p. 622

Set-off, as a defense, was unknown to the common law, and owes its origin altogether to statute.                    p. 622

The object of allowing the defense of set-off is to prevent circuity of action, and to enable the parties to adjust in one suit claims which, at common law, could not be settled without two or more actions.                              p. 623

In general, to authorize the defense of set-off, the debts must be mutual, must be between the parties in their own right, must be of the same kind or quality, and must be certain and clearly ascertained or liquidated.                     p. 623

For a claim for damages to be allowable as a set-off, the damages must be such as were fixed by the contract sued on; or the contract itself must furnish the standard by which the damages could be certainly ascertained.        pp. 625, 626

A plea of set-off that alleged a contract of the plaintiff to sell and deliver to the defendant certain articles at a price named. and then alleged that because of the failure and refusal of the plaintiff so to deliver the articles the defendant was obliged to purchase them at a market rate named in the plea, which was higher than the contract price, etc., presents a case of unliquidated damages and is not a proper plea.        p. 627

*Decided June 25th, 1914.*

---

*See however Ch. 393 of the Acts of 1914.

Appeal from the Circuit Court for Carroll County. (For-
sythe, Jr., J.)

The facts are stated in the opinion of the Court.

The 'cause was argued before Boyd, C. J., Briscoe,
Burke, Thomas, Pattison, Urner and Constable, JJ.

*Ivan L. Hoff* (with whom was *Edwin O. Weant* on the
brief), for the appellant.

*F. Neal Parke* (with *Lane & Keedy* and *James A. C.
Bond* on the brief), for the appellee.

Pattison, J., delivered the opinion of the Court.

The suit in this case was brought against the appellant, the
Westminster Metal and Foundry Company, by the appel-
lees, Andrew K. Coffman and Joe Brenner, trading as the
Reliable Junk Company, use of the Maryland Surety and
Trust Company.

The declaration contains the common counts, for goods
bargained and sold, for work done and materials provided,
for money lent, for money paid by the plaintiff to the de-
fendant at his request, for money received by the defendant
for the use of the plaintiff, and for money found to be due
from the defendant to the plaintiff on accounts stated be-
tween them; and one special count, for goods, consisting of
brass, lead, etc., sold and delivered by the plaintiff to the
defendant at the times and for the prices therein named,
under a contract between them.

The defendant pleaded thereto "never indebted" and set-
off. The plea of set-off contains the common counts for
goods bargained and sold, for goods sold and delivered, for
work done and materials provided, for money found to be
due by the plaintiff to defendant on accounts stated between
them; and two special counts, numbered therein five and six.

The fifth count alleges:

"And for that the plaintiffs on the 17th day of
July, 1912, agreed to sell to the defendant and the

defendant agreed to buy of the plaintiffs 30,000 pounds of red brass and 10,000 lbs. heavy yellow brass, to be delivered by the plaintiffs at the freight depot in the city of Westminster, in Carroll County, Maryland, within 60 days from date of agreement, at and for the price of 12¾ cents per pound for the red brass and 10 cents per pound for the heavy yellow brass, and the defendant says that it was at all times ready and willing to accept and pay for said red brass and heavy yellow brass, and that it made frequent demands upon the plaintiff for the delivery of the same; but that the plaintiff wholly failed and refused to make said delivery or to perform any part of their contract. And the defendant further says that because of the said failure and refusal on the part of the said plaintiff, it was compelled to go into the open market and purchase, at a price largely in excess of the agreed price aforesaid, to wit: at the rate of 14½ cents per pound of red brass similar to that which the said plaintiff so as aforesaid sold, but failed and refused to deliver, and at the rate of 10½ cents per pound of heavy yellow brass similar to that which the said plaintiff so as aforesaid sold but failed and refused to deliver."

The sixth count alleges:

"And for that the plaintiff on the 10th day of December, 1912, agreed to sell to the defendant and the defendant agreed to buy of the plaintiff, 50 tons of stove plate and 50 tons of heavy cast iron, to be delivered by the plaintiff at the property of the Westminster Metal and Foundry Co., on John Street, in the city of Westminster, in Carroll County, Maryland, during the months of December, 1912, and January, 1913, at the price of $10.00 per ton for the stove plate and $12.00 per ton for the heavy cast iron, and the defendant says that it was at all times ready and willing to accept and pay for all said stove plate and heavy cast iron, and that it made frequent demands upon the plaintiff for the delivery of the same, but that the plaintiff wholly failed and refused to make said

delivery or to perform any part of their contract. And the defendant further says that because of the said failure and refusal on the part of the plaintiff it was compelled to go into the open market and purchase at a price largely in excess of the agreed price aforesaid, to wit: at the rate of $14.75 per ton for stove plate similar to that which said plaintiff so as aforesaid sold, and at the rate of $14.75 per ton for the heavy cast iron similar to that which the said plaintiff so as aforesaid sold, but failed and refused to deliver."

The plaintiff demurred to said fifth and sixth counts of the defendant's plea of set-off and the demurrer was sustained. The case was submitted to the Court for trial upon issues joined on the remaining pleas, and the Court, sitting as a jury, found in favor of the plaintiff and judgment in its favor was entered upon such finding.

The main question involved in this appeal is whether or not the appellant's set-off is for liquidated or unliquidated damages. It is well established by the law of this State that if such damages are unliquidated, then they cannot be so pleaded.

The defense of set-off is unknown to the common law and owes its origin altogether to statute.

Section 12 of Article 75 of the Code of Public General Laws of 1912 provides:

"In any suit brought on any judgment' or bond or other writing sealed by the party, if the defendant shall have any demand or claim against the plaintiff, upon judgment, bond or other instrument under seal, or upon bill of exchange, check, etc. * * * he shall be at liberty to file such demand or claim in bar, or plead the same in discount of the plaintiff's claim, and judgment for the excess of one claim over the other, as each is proved, with costs of suit, shall be given for the plaintiff or the defendant, according as such excess is found in favor of the one or the other of these parties, if such excess be sufficient to support a judgment in the court where the cause is tried according to its established jurisdiction, etc."

Section 13 of the same Article applies to suits upon simple contracts.

The object of allowing this defense is to prevent circuity of action and to enable the parties to adjust in one suit claims which at common law could not be settled without two or more actions. And it may be stated in general terms that to authorize a set-off, the debts must be mutual, must be between the parties in their own rights, must be the same kind or quality, *and be certain and clearly ascertained or liquidated.* 1 *Poe's Pleading,* sec. 613; *Smith* v. *The Washington Gas Light Co.,* 31 Md. 12; *Hearn* v. *Cullin,* 54 Md. 533; *Steuart* v. *Chappell,* 98 Md. 527.

We must, therefore, in deciding this appeal, determine whether the claim of set-off in this case is for liquidated or unliquidated damages.

This Court has, in a number of cases, laid down the rule to be applied in ascertaining whether the claim made is for liquidated or unliquidated damages. In most instances the question has arisen in attachment proceedings. Nevertheless, we think the rule or test applied in those cases may be properly applied in this case, inasmuch as the question there decided was whether the claim made was one for liquidated or unliquidated damages, and that is the sole question here.

The rule is stated in the case of *Dirickson* v. *Showell,* 79 Md. 49, where the attachment was quashed upon the ground that the claim was for unliquidated damages,—not that an attachment could not have been issued for the recovery of such damages, but because no bond had been given by the plaintiff as required by the statute in cases of unliquidated damages. The Court in discussing the contract in that case said: "Is this a claim for unliquidated damages, where the measure or standard of the damages is not fixed by the contract itself? If the contract itself fixes the amount due or affords by its terms a certain measure for ascertaining that amount, an attachment will lie if the necessary jurisdictional facts appear; and the test is whether the contract furnishes a standard by which the amount of the indebtedness

or damages may be determined with sufficient certainty to permit the plaintiff to verify his claim by affidavit. *Wilson* v. *Wilson,* 8 Gill, 192; *Fisher* v. *Consequa,* 2 Wash. C. C. 382; *Warwick* v. *Chase et al.,* 23 Md. 154; *McAllister* v. *Eichengreen,* 34 Md. 54; *Williams, Garnishee,* v. *Jones,* 38 Md. 555; *Orient Ins. Co.* v. *Andrews & Locke,* 66 Md. 371." To these may be added the cases of *Steuart* v. *Chappell,* 98 Md. 527, and *Blick* v. *The Mercantile Trust and Deposit Co.,* 113 Md. 487.

It was said by our predecessors in *Warwick* v. *Chase, supra,* that "In *Fisher* v. *Consequa,* 2 Wash 382, the contract was, to deliver teas of a certain quality, and on failure to do so, to pay the difference between teas of such quality and such as should be delivered. There the standard was fixed by the contract; and so, also, in *Wilson* v. *Wilson,* 8 Gill, 192. In the case of *Clark* v. *Wilson,* 3 Wash. C. C. 560, where an attachment had issued to recover damages for the non-performance of the stipulations of a charter party, the Court, after reviewing the case of *Fisher & Consequa,* dissolved the attachment, because the contract did not show a standard by which the damages, consequent upon its violation, were to be ascertained. As we have said, the proposition generally stated is, that the standard must be shown by the contract, without the aid of inferences from extrinsic facts or circumstances."

The contracts referred to and set up in the defendant's plea of set-off, and under which he attempts therein to recover for breaches of them, are separate and distinct from the contract under which the plaintiff is seeking to recover. The measure of damages for breaches of each of these two separate contracts is defined and established by the Uniform Sales Act, Section 88, Article 83 of the Code of 1912, which is as follows:

"(1) Where the property in the goods has not passed to the buyer, and the seller wrongfully neglects or refuses to deliver the goods, the buyer may maintain an action against the seller for damages for non-delivery.

"(2) The measure of damages is the loss directly and naturally resulting in the ordinary course of events, from the seller's breach of contract.

"(3) Where there is available market for the goods in question, the measure of damages, in the absence of special circumstances showing proximate damages of a greater amount, is the difference between the contract price and the market or current price of the goods at the time or times when they ought to have been delivered; or if no time was fixed, then at the time of the refusal to deliver."

The defendant contends that the damages for the breach of these contracts are liquidated and not unliquidated, "that nothing remains uncertain or speculative as to such damages." In support of its contention the defendant cites us to the case of *Wilson v. Wilson, supra.* That case, in our opinion, however, differs widely from the case before us, and in distinguishing it from that case we cannot do better than use the apt and appropriate language and sound reasoning of this Court in the case of *Smithson & Owens v. U. S. Telegraph Co.,* 29 Md. 166, in distinguishing that case from the *Wilson case,* which applies with equal force to this case. This Court there said, in speaking of the *Wilson case:* "The amount of damages was fixed by the contract; or what was the same thing, the contract furnished a standard by which they could be certainly ascertained. The contract was that Tinsley & Co. were to guarantee the inspection of the flour which they were to deliver, and if it would not pass superfine then Wilson was to furnish them with the inspector's certificate of the flour as passed by him, and Tinsley & Co. were to make such deductions as was customary between the different qualities of flour in the place where the flour might be inspected and superfine flour."

"It was shown that the flour did not pass superfine and that the difference in the value of the flour according to the custom of the place where it was inspected was fifty cents

per barrel. The Court, in speaking of the damages in that case, say: "They were as easily ascertained as the value of goods sold where no price was fixed as value. The standard was so clearly ascertained by the contract itself, as to enable the plaintiff to aver it in his affidavit.' There is, we think, a broad distinction between this case in 8 Gill, and the case before us; and so far from sustaining the proposition of the plaintiff, is an authority against him. * * * Wilson could have charged no greater sum than fifty cents per barrel; that was the amount of damages agreed and fixed upon so soon as the inspector should certify. Tinsley & Co. could claim to pay no less, and if a jury had been called, they could have assessed neither more nor less. The mode of ascertaining the amount was just as certainly fixed by the contract, so that there could be no difficulty in ascertaining the amount and reducing it to a certain sum by force of the contract. There could have been no circumstances adduced to alter the amount; the damages were, therefore, liquidated and ascertained."

"Not so in this case; no stipulation was made by the defendants they, in the event of such and such a failure, would pay so much, to be ascertained from fixed data by some particular persons, the law fixed the contract between these parties. * * * They might have had many defenses to offer in proof, either to exonerate them from liability altogether, or to mitigate the damages; surely damages, which may be gotten rid of altogether or mitigated by proof of circumstances, cannot be liquidated."

A case much like the one before us is *Godkin* v. *Bailey,* 74 N. J. L. 655, 65 Atl. 1032, 9 L. R. A. (N. S.) 1134. In that case the plaintiff sued in assumpsit for the price of goods sold and delivered. The defendants pleaded the general issue and set-off. The set-off claimed by them was the difference in price paid by them for lumber which the plaintiff had failed to deliver. The statute of that State upon which the Court rested its decision authorizes the set-off of demands which are not for unliquidated damages. The

Court there said: "In the case at bar the claim of the defendants was for the difference between the contract price and the price actually paid by them. * * * Such is not the rule. The true measure of damages, as stated by Benjamin on Sales, is the difference between the contract price and the value of the goods at the date fixed for delivery. The value is *prima facie* the market price, but there may be cases where there is no market, and the value must be otherwise determined, for example, by the price of the best substitute procurable. *Benjamin, Sales,* 5 Eng. Ed. 987. Even in cases where there may be said to be a market price, the determination of that price involves a consideration of the identity in the quality of the goods and an allwance for differences in prices actually paid, which vary from day to day and with the skill in bargaining of the vendor and the purchaser in each case. The market price must often, if not usually, be determined by a jury in view of the different elements which may cause variations in any particular case. The final result must be uncertain, and the damages are therefore unliquidated."

Our attention has been called to the case of *Kelley, Maus & Co.* v. *Matthew Caffrey,* 79 Ill. Appl. 278, in which that Court held that damages like those now under consideration were liquidated and not unliquidated, but later in *Horn* v. *Noble,* 95 Ill. Appl. 101, the Court decided that such damages were unliquidated, and still later the Supreme Court of Illinois in *Higbie* v. *Rust,* 211 Ill. 333, 71 N. E. 1010, treated such damages as unliquidated.

The damages claimed in the defendant's set-off plea are, we think, unliquidated and were not properly pleaded in this case; and therefore the Court below committed no error in its rulings upon the demurrers, and we will affirm the judgment.

*Judgment affirmed, with costs to the appellee.*