## STEUART & STEUART vs. ALCINDA M. CHAPPELL.

*Appeal—Attachment on Two Non Ests—Account or Voucher—Lawyer's Claim For Professional Services is for Unliquidated Sum.*

An appeal lies from an order quashing an attachment since it terminates that proceeding and is a final order.

An attachment after two *non ests* may be had when the defendant is a non-resident as well as when he is a resident of the State.

In an account for professional services rendered at different places at designated times it is not necessary to set out in detail the services rendered in each particular case and the sum claimed as compensation in each.

An account was filed with a declaration under the Practice Act but the defendant was not summoned, and afterwards an attachment upon two *non ests* was issued and another account filed. *Held*, that any variance between the two accounts is immaterial in the attachment suit.

The claim of a lawyer for professional services, where no definite sum was agreed upon by the parties, is a claim for an unliquidated amount— the reasonable value of the services—and cannot support an attachment wherein the plaintiff's cause of action must either show on its face the precise sum due by the defendant or itself furnish the means of ascertaining the amount by computation.

Appeal from Baltimore City Court (DENNIS, J.)

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, PAGE, PEARCE, and SCHMUCKER, JJ.

*David Stewart*, for the appellants.

*Frederick C. Cook*, for the appellee.

PEARCE, J., delivered the opinion of the Court.

This case originated in a suit brought in the Baltimore City Court, March 3rd, 1902, by the appellants to recover from Thomas C. Chappell for professional services rendered to him. After two returns of *non est* therein, the plaintiffs on February 28th, 1903, filed a petition under sec. 24 of Art. 9 of the Code of Public General Laws, verified by their affidavit, and on the same day the Court ordered an attachment to issue, which was laid in the hands of the appellee as garnishee of Thomas C. Chappell. Accompanying the petition for the writ of attachment was the following paper, designated in the record, "Account and cause of action sued on :"

Baltimore, November 1st, 1899.

Thomas C. Chappell,

To Steuart & Steuart, Dr.

To professional services rendered from April to October, 1899,
both inclusive, to retainer.................................... $250
To fee for additional services rendered.......................1000   $1250

April 10th, 1899, by check.................................... 250

Balance due................................................... $1000

There was also filed with said account, a statement of the numerous services rendered during a protracted litigation, and a detailed enumeration of the various matters considered in the rendering of these services, showing twenty-four separate and distinct suits. The short note filed with the petition con-

tained the common counts, and one claiming $1,000 due and owing for professional services as attorneys at law. The record also contains the *narr.* filed in the original proceeding and the account filed therewith, the latter being as follows:

Baltimore, Md., January 31, 1900.

Mr. Thomas C. Chappell,
                    To Arthur Steuart and James L. Steuart,
                              Partners, practicing law as
                                   Steuart & Steuart, Dr.
Professional services rendered in Baltimore, New York and else-
    where from March, 1899, to October, 1899 ...............................$1000

The attachment was returnable on the 2nd Monday in March, and was laid in the garnishees hands March 6th, 1903. On March 31st, 1903, she appeared by attorney and moved to quash the attachment. 1. Because of irregularities appearing upon the face of the proceedings. 2. Because of an alleged variance between the account filed with the *narr.* in the original case, and that filed as a voucher in the attachment proceedings. 3. Because the claim sued on is not a liquidated claim as required to be in such a proceeding as this.

The Court sustained the third ground and quashed the attachment, and from that order this appeal is taken, and the appellee has moved to dismiss the appeal.

It is settled in this State that no appeal will lie from an order refusing to quash an attachment, for the reason that such order is an interlocutory ruling merely. *2 Poe's Practice,* sec. 538; *Baldwin* v. *Wright,* 3 Gill, 246, (case 9 of that group of appeals). *Mitchell* v. *Chestnut,* 31 Md. 527; *Parkhurst* v. *Citizens Nat. Bank,* 61 Md. 259. But since an order *quashing* an attachment, *terminates that proceeding,* it is necessarily a final order, and from all final orders an appeal lies. Consequently in *Wright* v. *Baldwin,* 3 Gill, 245 (case 8 of that group), where the appeal was from an order *quashing* the attachment, the appeal was entertained, and the order was reversed. That case was decided before the Act of 1852, now secs. 20 to 23 of Art. 9 of the Code, which gives the right of appeal to either party, where the defendant, before the return day of the writ, files a special petition to have it quashed, thus clearly showing that the right of appeal, in a case like

the present, exists under the general law, and cannot be re-
ferred to, nor controlled by secs. 20 to 23 of Art. 9. The
motion to dismiss will therefore be overruled.

A suggestion was made at the argument that an attach-
ment cannot be had after two *non ests*, if the defendant be a
non-resident, as it is said he is here, but the right was sus-
tained in *Barney* v. *Patterson*, 6 H. & J. 200, and in *Risewick*
v. *Davis*, 19 Md. 93, where there was apparently room for
question under the language of the Act of 1715, ch. 40, then
in force; and all question was removed when that Act was
codified in sec. 24 of Art. 9 of the Code, by the omission of
the language upon which the doubt was founded.

The first ground for the motion to quash appears to be that
the voucher on account upon which the attachment is based
is too vague to be the foundation of any attachment proceed-
ing, and that it should set out in detail the services rendered
in each particular case, and the sum claimed as compensation
in each, but we do not agree with this contention. It has
been held where an indebtedness is for money loaned at dif-
ferent times, that it is not necessary in order to comply with
the provisions of the attachment law, that the accounts should
specify the dates and amounts of the several loans (*Cox* v.
*Waters*, 34 Md. 460; *Summers* v. *Oberndorf*, 73 Md. 316),
and this ruling we think is decisive of the present objection.
The second ground is an alleged variance between the account
sworn to at the time of issuing the attachment, and that filed
with the original declaration, in respect of the total amount
charged for the services rendered. But if there be such vari-
ance, it is wholly immaterial. The account filed with the
original declaration was filed under the Rule Day Act, and
the defendant never having been summoned, and this Act never
having been called into operation in this case by seeking a
judgment by default, the appellants cannot be prejudiced in
this proceeding by anything in that account. *McSherry* v.
*Brooks*, 46 Md. 122; *Laubheimer* v. *Naill*, 88 Md. 174. The
Rule Day Act can have no effect whatever upon proceedings
under the attachment law. *Sanborn and Mann* v. *Mullen*, 77

Md. 480. The third objection is that the claim is not liqui-
dated, and therefore will not sustain an attachment proceed-
ing *such as that before us.*

Upon this point, Mr. Rood in his recent work on *Garnish-
ment*, sec. 148, thus states the law: "Demands, the amount of
which cannot be ascertained by computation, but only by the
verdict of a jury, or in other similar manner, are not included
in the terms of statutes declaring what property and debts
may be attached by garnishment;" and Mr. Poe, in his work
on *Practice*, sec. 415, says, "As the result of the authorities, it
may be stated that the claim, in order to be within the Act,
must be one for an ascertained amount of liquidated indebt-
edness to which a plaintiff can safely and properly swear, and
the cause of action which must be filed with the declaration,
must be one which either on its face shows the liability of the
defendant and the *amount of such liability*, or which itself fur-
nishes the standard or means of arriving at such liability."
Mr. Poe is speaking here of the practice under the special
Rule Day Act, but he had just said in sec. 414, "It is to be ob-
served that the requirements of the Act, in respect of the
cause of action are identical with those of the attachment law
against non-residents, and the decisions upon the latter are
therefore applicable to the former," and he is supported in
this by the decision in *State, use of Bouldin* v. *Steibel*, 31
Md. 37.

Before the Act of 1888, ch. 507, now sec. 43 of Art. 9 of
the Code, unliquidated damages could not be recovered by
attachment in this State, except where the action was for ille-
gal arrest, false imprisonment, or violations of certain articles
of the Bill of Rights, and the provisions of the Code relating
to the writ of *habeas corpus*, but that Act now allows attach-
ments in cases arising *ex contractu* where the damages are un-
liquidated, and in actions for wrongs independent of contract,
but requires a declaration setting out *in detail*, the breach of
contract or tort complained of, verified by affidavit, and a bond
similar to that required in attachments on original process for
fraud. In the absence of these essentials, the attachment

could not be sustained under *that Act*, and it is apparent that the proceedings were instituted under the theory that the damages claimed are recoverable under the general attachment law applicable to non-residents and absconding debtors, although the claim is upon a *quantum meruit*, in other words, that the damages are liquidated. The rule stated by Mr. Poe for determining whether damages are liquidated or unliquidated, is sustained by many cases in Maryland and elsewhere, and among these is the leading case of *Fisher* v. *Consequa*, 2 Wash. C. C. Rep. 382, where the process of attachment was said to be applicable only to "a *demand* arising *ex contractu*, the amount of which was ascertained, or which was susceptible of ascertainment by some standard referrable to the contract itself, sufficiently certain to enable the plaintiff by affidavit to aver it or a jury to find it," and that such a *demand* "might be the foundation of a proceeding by way of foreign attachment, without reference to the form of action, or the technical definition of *debt* the expression used in the law." This rule has nowhere been more clearly expressed than in *Smithson & Owens* v. *United States Telegraph Co.*, 29 Md. 166, where it was said: "The rule upon the subject of liquidated and unliquidated damages we take to be, that where a precise sum for damages is not agreed upon, and is not of the essence of the contract between the parties, the *quantum* of damages is unliquidated, and it is for a jury to assess them; but where the precise sum has been fixed and agreed upon between the parties, that sum is the ascertained and liquidated damages, and the jury must assess that amount, no more and no less."

As was said by the Judge at the trial of the case now before us, "There is no agreement alleged by which the defendant bound himself to pay any particular sum, and the value of these services is put at what the plaintiff himself assumes they are worth. This is by no means the real test of their value; the real test is what they are reasonably worth, and that must be determined by a jury after testimony." In one of the earlier American cases where the question was one of set-off under a statute excluding unliquidated dam-

ages, (*Butts* v *Collins*, 13 Wend. 139), it was said "unliquidated damages are such as rest in *opinion* only, and must be ascertained by a jury. They are damages which cannot be ascertained by computation or calculation; as for instance, damages for not using a farm in a workmanlike manner; for not skillfully amputating a limb; for unskillfully working raw material into a finished fabric, and other cases of a like character where are no data given for computation, or any mode of calculation."

So in *Hepburn* v. *Hoag*, 6 Cowen, 613, damages for breach of covenant to provide proper medicine and medical attendance, were held unliquidated; and in *Eastman* v. *Thayer*, 60 N. H. 575, damages arising from non-performance of covenants in a lease were held not attachable for the same reason, the Court saying, "The ascertainment of defendant's claim requires the exercise of judgment, discretion and *opinion*, and not mere calculation or computation. *Consequently* it is for unliquidated damages."

In *Capes* v. *Burgess*, 135 Ill. 67, where it was sought to attach damages for breach of warranty of a stallion, the Court said: "Where the liability consists of damages which can be rendered certain, only by the judgment of a Court, such liability cannot be said to be *due*, or to be capable of becoming due until judgment has been rendered." The weight of authority seems to be that an unadjusted claim for a loss upon a fire policy is not subject to attachment, but without intimating any view upon this question reference may be appropriately made here to the case of the *Girard Fire Ins. Co.* v. *Field*, 45 Pa. St. 129, where the contrary view was held by two of the three Judges sitting. The Court held that case as coming in within the rule declared in *Fisher* v. *Consequa, supra*, saying. "We cannot come to the conclusion that every unliquidated claim is without the reach of the attachment process. The reason of the exception has sufficient ground to operate on, in the exclusion from it of such claims as are contingent, and such "as possess no fixed standard for liquidation like torts or damages for breach of contract. These are

demands, but not definite enough to be classed as "personal estate," "goods and chattels" and "goods and effects." They want "tangibility and are not attachable, nor would they be the foundation for the process."

The case of *Calvert* v. *Coxe*, 1 Gill, 95, relating to the compensation of an attorney for professional services sought to be recovered under a *quantum meruit* seems to be suggestive of the view that would have been taken by the Court if that proceeding had been an attachment. In that case, the majority of the Court, Judges ARCHER, CHAMBERS and SPENCE, held that it was not competent for the plaintiff to offer evidence of what was paid to, or demanded by, any attorney in particular for like services, and that he could only offer evidence of the usual and customary compensation for services of the like kind, saying, "We cannot judicially know the standing of any one member of the bar, or the circumstances under which he was paid, or demanded a given sum for his services." JUDGE DORSEY dissented from this ruling and argued that a witness who should undertake to testify what was the usual and ordinary compensation for such services, could only be qualified so to testify from his knowledge of what was so paid by others for like services, and that it was therefore competent to prove in the first place what had been paid to other counsel in similar cases. But whatever may be thought of these divergent views, neither affords any certain measure or standard for ascertaining the value of the services without the aid of inferences from extrinsic facts and circumstances, and such evidence would not bring this case within the rule herein stated. The case of *Dirickson* v. *Showell*, 79 Md. 49, was much relied on by the appellant, but we cannot perceive how that case aids his contention. There the contract was to sell and deliver a certain promissory note for $2,000, with interest from May, 1890, for the sum of $1,850, which he declined later to do, and in sustaining the attachment the Court said: "The contract here declared on is no less certain as to the standard by which the damages resulting from a breach of it are to be ascertained, than is an agreement for the sale of

goods where no price has been stipulated.   *Wilson* v. *Wilson,* 8 Gill, 192."

Reference to that case will show that the contract there furnished a plain standard for ascertaining the indebtedness without resort to extrinsic circumstances.

We can discover no error in the ruling of the learned Judge below, and the judgment quashing the attachment will be affirmed.

> *Judgment affirmed with costs above and below.*

(Decided January 20th, 1904.)