912 A.2d 64

PHYLLIS J. OUTLAW AND ASSOCIATES

v.

Joyce GRAHAM et al.

No. 2535, Sept. Term, 2005.

Court of Special Appeals of Maryland.

Dec. 6, 2006.

Phyllis J. Outlaw, Kimberly K. Fahrenholz, Washington, DC, for appellant.

Francis J. Ford, Bethesda, Jason Levine, Greenbelt (Walter E. Laaeke, Jr., Greenbelt), for appellee.

Panel Murphy, C.J., Woodward, Lawrence F. Rodowsky, (retired, specially assigned), JJ.

RODOWSKY, J.

The appellant, Phyllis J. Outlaw & Associates (Outlaw), is a law firm. By this action, Outlaw seeks to recover compensation for professional services in litigation, filed in the Circuit Court for Prince George's County, involving personal injuries to appellee, Kahlita Graham (Kahlita), daughter of appellee, Joyce Graham (Joyce), collectively, "the Grahams." The Grahams terminated Outlaw's representation and engaged as counsel two other appellees, Walter E. Laake, Jr., Esquire (Laake) and Joseph, Greenwald & Laake, P.A. (the Firm). When the Firm effected a settlement with the remaining appellee, Government Employees Insurance Company (GEI-CO), Outlaw unsuccessfully sought to freeze or seize the settlement funds to the extent of Outlaw's claim for services. The instant interlocutory appeal was noted by Outlaw from an order which (1) denied a preliminary injunction, (2) denied a garnishment on original process, and (3) "authorized" the "Defendants" to distribute the settlement proceeds. For the reasons set forth below, we shall affirm in part and dismiss the appeal in part.

On October 2, 2001, Kahlita, then age nineteen, suffered personal injuries in an automobile accident. She was a pas-

senger in a car owned by Kim Boone and driven by Bryan Boone. The Boone car was struck by an automobile, driven by Beth Anderson Smith and owned by Charles T. Smith, which failed to stop at a stop sign. As a result of the collision, Kahlita suffered, *inter alia,* a concussion and closed head injury, resulting in cognitive impairment.

Joyce engaged Outlaw to represent the Grahams. On October 9, 2001, Joyce, "on behalf of Kahlita," signed a retainer agreement with Outlaw. It provided for a contingent fee of thirty-three and one-third percent if recovery were by settlement and forty percent if an action were filed in court. If Outlaw's services were terminated prior to completion of the case, the agreement provided for an hourly rate of $255. There was a flat fee of $695 for processing Personal Injury Protection (PIP) or medical payment claims. The retainer agreement further contained the following provisions:

"Should Client terminate the services of Attorney prior to settlement and employ other counsel in this matter, then said termination shall be in writing, signed by Client. Client hereby authorizes said other counsel to pay directly to Attorney such sums as may be due and owing Attorney for professional services rendered and for costs accumulated and paid by Attorney, through the effective date of termination, and to withhold such sums from any settlement, judgment, or verdict as may be necessary to adequately protect and fully compensate Attorney. Client further gives a lien on Client's lawsuit arising from the incident which forms the basis of this retainer to Attorney against any and all proceeds of any settlement, judgment, or verdict which may be paid to other counsel or Client in connection with that lawsuit."

The Smiths' (*i.e.,* the adverse) vehicle in the October 2, 2001 accident was insured against liability for $50,000 per person. The Grahams' suit against the Smiths settled for policy limits, and, on October 15, 2004, Outlaw disbursed that settlement, retaining a $16,500 fee.

More than two years after the accident, Outlaw also filed suit for Kahlita against the City of Laurel and Prince George's County, alleging that the stop sign which the adverse driver failed to obey was obscured by vegetation which the defendants, allegedly negligently, had failed to clear. The court (Shepherd, J.) dismissed that action on August 2, 2004, because notice of the claim was untimely.

On behalf of Kahlita, Outlaw, on September 30, 2004, filed suit against the Boones (*i.e.*, the host driver and owner) and against GEICO, their underinsured motorist insurance carrier.

The Grahams terminated their representation by Outlaw on April 4, 2005, and engaged the Firm. After an exchange of correspondence between Outlaw on the one hand and the Grahams and the Firm on the other, Outlaw transferred the client's file and escrowed funds later that month or in early May.

By certified mail dated July 1, 2005, to the Grahams, the Firm, and GEICO, Outlaw served notice "of a statutory attorney's lien for legal fees due on proceeds to be awarded to Kahlita[.]" The notice expressly included "proceeds of any settlement," and was obviously intended to comply with Maryland Rule 2–652, as amended effective January 1, 2003, which, as so amended, implements Maryland Code (2000, 2004 Repl. Vol.), § 10–501 of the Business Occupations and Professions Article (BOP).[1] Following up that notice, and expressly relying on Rule 2–652(c)(1), Outlaw, on July 8, 2005, filed a motion in *Graham v. Boone*, seeking an adjudication of the rights of the parties in relation to the asserted lien. The court (Lamas-

---

1. That statute, as amended, by Chapter 422 of the Acts of 2002, effective October 1, 2002, provides in relevant part:

   "(a) *In general.*—Subject to subsection (b) of this section, an attorney at law has a lien on:

   . . . .

   "(2) a settlement, judgment, or award that a client receives as a result of legal services that the attorney at law performs.

   . . . .

   "(d) *Execution.*—An attorney at law may . . . bring an action for execution under the lien only in accordance with rules that the Court of Appeals adopts."

ney, J.), on November 18, 2005, denied that motion, as supplemented, finding that there was no lien.[2]

Thereafter, Kahlita settled with GEICO for $225,000. Those funds were transmitted on December 12 by GEICO to the Firm. Outlaw alleges that it was on December 16 that GEICO advised it of the settlement and disbursement of the check to the Firm.

Outlaw brought the present action on December 19, 2005, by a two-count complaint. Accompanying the complaint were motions for a temporary restraining order and preliminary injunction, and for the issuance of a writ of attachment.

Outlaw's complaint alleged, and its affidavit supporting injunctive relief affirmed, that Outlaw had devoted 425.55 hours to the Grahams' claims so that, at the hourly rate of $255, Outlaw claimed a total of $108,515.73 for legal services. This was said to represent eighty percent of all of the legal work needed to bring the underinsured motorist matter to trial. In Count I of the complaint, Outlaw sued the Grahams for breach of contract. In Count II, Outlaw named GEICO, Laake, and the Firm as defendants. The relief sought was a declaratory judgment for "80% of all legal fees recovered and/or disbursed to [the Grahams] . . . or alternatively, judgment against the Defendants" for $108,515.73, with interest, costs, attorney's fees, "and such other relief as this Court deems just and appropriate." Count II alleged that, pursuant to the Maryland Rules of Professional Conduct (MRPC), Rule 1.15,[3] Laake

---

2. As originally enacted by Chapter 3 of the Acts of 1989, BOP § 10–501 did not provide for a charging lien on the proceeds of a settlement. *See Consolidated Constr. Servs., Inc. v. Simpson,* 372 Md. 434, 456–65, 813 A.2d 260, 273–79 (2002). Provision for a lien on settlement proceeds was added by Chapter 422 of the Acts of2002. Under § 2 of that enactment, the amendment applies only to a retainer agreement "entered into on or after [October 1, 2002]." The Outlaw–Graham retainer agreement was made October 9, 2001.

3. MRPC Rule 1.15(e) provides:

"When in the course of representation a lawyer is in possession of property in which two or more persons (one of whom may be the lawyer) claim interests, the property shall be kept separate by the

and the Firm were "required to escrow funds in dispute until the dispute is resolved."

The court (McKee, J.), acting *ex parte* as permitted by Maryland Rule 15–504(b), issued a temporary restraining order, freezing the settlement proceeds in the hands of the Firm and setting a hearing on a preliminary injunction for ten days thereafter, December 29.

In their written opposition to Outlaw's request for an injunction, the appellees argued that there was no retainer agreement between Outlaw and Kahlita, that Outlaw had no charging lien, and that Outlaw had been discharged for cause, so that it was unlikely that Outlaw could prevail on the merits. The appellees further argued that harm to Outlaw would not be irreparable, and that the balance of convenience and public policy favored the appellees. At the December 29 hearing, Outlaw disclaimed relying on a charging lien, but instead based its argument on, *inter alia,* MRPC 1.15.

The court (Nichols, J.) signed an order that day, which was entered January 5, 2006, denying injunctive relief, denying an attachment before judgment, and ordering "that the Defendants are hereby authorized to distribute the settlement proceeds that are the subject of this action accordingly." [4] From that order this appeal timely was noted.[5]

Subsequently, the Firm disbursed the settlement proceeds to its client(s) and itself.

---

lawyer until the dispute is resolved. The lawyer shall promptly distribute all portions of the property as to which the interests are not in dispute."

**4.** The sole rationale expressed orally by the court was that it did not think that the relief sought by Outlaw was "applicable in this case under the law as I understand it."

**5.** The record extract contains motions, memoranda, and an amended complaint, as well as a ruling by the court (Clarke, J.) all of which were filed after the ruling from which this appeal was taken. They form no part of the record on this appeal.

22

**I**

██ Maryland Code (1974, 2002 Repl.Vol.), § 12–303(3)(i) of the Courts and Judicial Proceedings Article (CJ), confers on this Court jurisdiction to hear an appeal from an interlocutory order which grants or dissolves an injunction. In this case, however, the issue of Outlaw's entitlement to an injunction, which would have enjoined the Firm from disbursing the proceeds of the settlement received from GEICO, is clearly moot. Because that disbursement has already been made, this Court cannot order that requested relief.

Numerous Maryland decisions illustrate the rule. They include *Mercy Hosp., Inc. v. Jackson,* 306 Md. 556, 561, 510 A.2d 562, 564–65 (1986) (dismissing appeal as moot because patient no longer required medical treatment that included a blood transfusion, to which she refused to consent; the Court concluded "[n]othing that we say will bind the parties to any future course of action or will affect or remedy what has already taken place"); *National Collegiate Athletic Ass'n v. Tucker,* 300 Md. 156, 158–59, 476 A.2d 1160, 1161 (1984) (after lacrosse season, dismissing, as moot, appeal from injunction allowing allegedly ineligible lacrosse players to participate in intercollegiate games); *Hagerstown Reprod. Health Servs. v. Fritz,* 295 Md. 268, 454 A.2d 846 (holding, as moot, appeal from circuit court injunction prohibiting abortion where abortion performed during appellate stay), *cert. denied,* 463 U.S. 1208, 103 S.Ct. 3538, 77 L.Ed.2d 1389 (1983); *Attorney General v. Anne Arundel County Sch. Bus Contractors Ass'n,* 286 Md. 324, 327–28, 407 A.2d 749, 752 (1979) (dismissing appeal as moot, because the activities which the Attorney General sought to have enjoined were discontinued); *Lloyd v. Board of Sup'rs of Elections of Baltimore County,* 206 Md. 36, 39, 111 A.2d 379, 380 (1954) (dismissing appeal by candidate as moot, because the primary election had already concluded and "[t]he chronology of the case makes it apparent that nothing this Court could do, by reversal or otherwise, could undo or remedy that which has already occurred"); *Banner v. Home Sales Co. D,* 201 Md. 425, 428, 94 A.2d 264, 265 (1953) (stating "the general rule is 'that the court should confine itself to the

particular relief sought in the case before it, and refrain from deciding abstract, moot questions of law, which may remain after that relief has ceased to be possible' " (quoting *Whitman v. Chesapeake & Potomac Tel. Co.*, 147 Md. 279, 281, 128 A. 39, 39 (1925))); *Munder v. Purcell*, 188 Md. 115, 118–19, 52 A.2d 923, 925 (1947) (dismissing appeal as moot because the order of the Public Service Commission at issue was rescinded).

Appellees, referring to Rules 2–632(f) and 8–425(a) to demonstrate the potential availability to Outlaw of a stay, pointed out in their brief to this Court that Outlaw did not seek a stay from the circuit court, or from this Court. In its reply brief, Outlaw argues that, under the Rules, endeavoring to obtain a stay is not mandatory. This rejoinder misses the mark. Mootness in this case results from events, consistent with the circuit court's denial of an injunction, having outrun and rendered impracticable the relief sought by Outlaw from this Court. Consequently, we dismiss the interlocutory appeal from the denial of injunctive relief.

## II

Outlaw also appeals the circuit court's rejection of its application for a writ of attachment before judgment, under which it sought to garnish, to the extent of some $108,000, credits in the hands of the Firm that were due to its client(s). CJ § 12–303(2) authorizes an appeal from an interlocutory order "granting or denying a motion to quash a writ of attachment." There was no motion to quash a writ of attachment in the instant matter. Nevertheless, we conclude that the ruling is appealable.

## A

Section 12–303(2) is explainable in terms of the prior practice concerning attachments before judgment. *See generally* 9B Maryland Code (1957, 1971 Repl.Vol.), Chapter 1100, Subtitle G. Under that practice, attachment before judgment was commenced by filing a declaration, an affidavit setting forth

the grounds of entitlement to an attachment on original process, any documentary evidence of the claim, instructions to the sheriff, and, in certain cases, a bond. *See* Rule G42. "Upon filing of the documents required by Rule G42 ... *the clerk shall issue a writ of attachment against the property of the defendant.*" Rule G44 (emphasis added). Upon issuance of the writ, the sheriff could seize property, Rule G46, or, on a writ of attachment by way of garnishment, seize credits in the hands of a garnishee. Rule G47. No pre-seizure notice to the defendant was required by rule. Once the seizure had been accomplished, however, the defendant or garnishee could file a motion to quash the writ. Rule G51. If no interested person contested the seizure or, if a motion to quash was filed, and overruled, the court entered a judgment of condemnation of the seized property. Rules G54, G55, G57, and G59.

In 1973, the above-described attachment practice, as set forth in the former subtitle G Rules, was held to violate the due process clause of the Fourteenth Amendment. *Roscoe v. Butler,* 367 F.Supp. 574 (1973). Applying the principles of *Sniadach v. Family Finance Corp. of Bay View,* 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969), and of *Fuentes v. Shevin,* 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972), the court noted, *inter alia,* that, under the prior practice, "the clerk cannot determine if the documents submitted constituted a *prima facie* claim," and the clerk "cannot require an *ex parte* hearing with the creditor." 367 F.Supp. at 581–82. Rather, if the plaintiff took the procedural steps set forth in the rule, "the Clerk must issue the writ of attachment against the property of the defendant and assign the case for trial." *Id.* at 577–78. After the decision in *Roscoe v. Butler,* the Court of Appeals amended the attachment rules to provide for judicial review of a request for an attachment before judgment, as now set forth in Rule 2–115.[6]

---

6. Rule 2–115(a) provides:

"(a) **Request for writ.** At the time of filing a complaint commencing an action or while the action is pending, a plaintiff entitled by statute to attachment before judgment may file a request for an order

The former subtitle G Rules were part of the chapters relating to Special Proceedings which were first added to the Maryland Rules of Procedure by the Court of Appeals effective January 1, 1959. 1958 Md. Rules at 298.[7] Prior to the adoption of the Special Proceedings Rules, the practice in attachment cases was governed by statute. After the adoption of rules governing attachment, those procedural statutes, then codified in Maryland Code (1957, 1961 Cum.Supp.), Article 9, "Attachments," were repealed by Chapter 36 of the Acts of 1962. 1962 Md. Laws at 99.

Former Article 9 also provided for appeals in attachment cases. Maryland Code (1957), Article 9, § 22, read: "Either party shall be at liberty to appeal to the Court of Appeals, from the decision of the judge on said petition or motion to quash." [8] This statute was amended by Chapter 36 of the Acts of 1962 and transferred to former Article 5, "Appeals," as new § 20A. Section 20A read: "Any party may appeal to the Court of Appeals from a decision granting or denying a motion to quash a writ of attachment." 1962 Md. Laws at 103–04. Former Article 5, § 20A is now CJ § 12–303(2).

Historically, because an order quashing an attachment terminated that proceeding, it was appealable under the general appeals statute as a final judgment. *Steuart v. Chappell,* 98 Md. 527, 529, 57 A. 17, 18 (1904). On the other hand, an order refusing to quash an attachment was considered interlocutory, from which no appeal would lie, absent a special statute. *Id.*

---

directing the issuance of a writ of attachment for levy or garnishment of property or credits of the defendant. The request may be made ex parte. The plaintiff shall file with the request an affidavit verifying the facts set forth in the complaint and stating the grounds for entitlement to the writ. The request and affidavit need not be served pursuant to Rule 1–321 at the time of filing."

7. At that time, the rules governing "Attachment on Original Process" were Article III of Chapter 1100, "Special Proceedings," of the Maryland Rules.

8. The petition to quash was in effect a motion to quash that was filed before the return day of the writ and could be heard by the court prior to the return day. *See* Maryland Code (1957), Article 9, § 20.

Defendants in attachment, whose motions to quash were overruled, had to suffer a judgment of condemnation on the attachment before that ruling on a motion to quash was appealable. *See Parkhurst v. Citizens' Nat'l Bank,* 61 Md. 254, 259, 1884 WL 5968 (1884) (attachment after judgment); W.L. Hodge & R.M. McLane, Jr., *The Law of Attachment in Maryland* § 97 (1895). By Chapter 155 of the Acts of 1852 (a predecessor to CJ § 12–303(2)), the right to appeal the denial of a motion to quash was created in cases of attachment on original process. Thus, by treating, for purposes of appeal, the denial of a motion to quash in the same fashion as the grant of that motion, CJ § 12–303(2) represents a liberalization of the right to appeal in attachment cases.

Under current practice, initial judicial review of entitlement to the writ before judgment has been moved forward in the proceeding from a hearing on a motion to quash to the court's examination of the request by the plaintiff. *See* Rule 2–115(c).[9] It is a review of substance, and not the ministerial review previously made by the clerk of court. Thus, the court's refusal to authorize the writ produces, today, the same termination of an attachment as the court's grant, under the earlier practice, of a motion to quash after a writ had been issued.

CJ § 12–303(2), by speaking in terms of a "motion to quash," continues to use the language of Chapter 36 of the Acts of 1962. Nevertheless, CJ § 12–303(2) is intended to confer a substantive right of appeal from a ruling that either terminated a prejudgment attachment or allowed it to pro-

---

9. Rule 2–115(c) reads:

"(c) **Proceedings on request for writ.** The court shall review the complaint, any exhibits, and the supporting affidavit. The court may require the plaintiff to supplement or explain any of the matters set forth in the documents or to provide further information regarding the property to be attached. If the court determines that the plaintiff is entitled to the writ of attachment, it shall order issuance of the writ conditioned on the filing of a bond by the plaintiff for the satisfaction of all costs and damages that may be awarded the defendant or a claimant of the property by reason of the attachment. The order shall prescribe the amount and security of the bond."

ceed. Rule 2–115, by changing the procedure, cannot abrogate that substantive right.

One might consider that the motion to quash a prejudgment attachment survives under Rule 2–115(g) ("Upon motion of a defendant or garnishee, the court ... may dissolve the attachment on the ground that the plaintiff is not entitled to attachment before judgment"). From the standpoint of a creditor who seeks an attachment, the application of CJ § 12–303(2) cannot be limited to grants of a motion to dissolve. Rule 2–115(g) addresses circumstances where the prejudgment writ has been issued, and seizure of property has been effected. But, if, in the initial judicial review under Rule 2–115(c), the court refuses to issue the writ, there could be no Rule 2–115(g) motion, and CJ § 12–303(2) could never operate to permit an appeal by an aggrieved plaintiff from a ruling that "quashed" the writ. Limiting the operation of § 12–303(2) to rulings on motions filed after the writ has been issued would make non-reviewable a ruling denying issuance of the writ, even though the same rationale for the ruling clearly could have been appealed if made on a motion to quash under the former practice. So to construe § 12–303(2) would reduce its scope of operation without any substantive change in the statutory language having been made after the adoption of Rule 2–115.

The foregoing construction of CJ § 12–303(2) is reinforced by Rule 2–115(b), reading:

"(b) **Single action.** The request for the writ of attachment shall be filed in the same action as the complaint. The complaint and the request for the writ of attachment and all further proceedings shall constitute a single action and shall be docketed accordingly."

This rule effects another change from historic prejudgment attachment practice. That practice viewed as two cases the complaint, or "short note," and the relatively-automatically-issuing attachment on original process. *See* W.L. Hodge and R.M. McLane, Jr., *supra,* §§ 48; 50. Under the historic practice, quashing the writ of attachment would terminate the

attachment case, and that ruling was appealable as a final judgment. That ruling was also appealable by the statute that authorized appeal from the denial, as well as the grant, of a motion to quash. Today, Rule 2–115 makes the complaint and the request for the writ a single action, thereby removing the denial of a request for a prejudgment attachment from the operation of CJ § 12–301 (the general appeals statute). Thus, the General Assembly, in CJ § 12–303(2), has maintained a provision for an interlocutory appeal from the grant of a "motion to quash," as the implementation of its intent that a ruling denying the writ be immediately appealable.

Accordingly, the circuit court's ruling denying a writ of attachment in the instant matter is appealable by Outlaw.

## B

■ In Maryland, statutes confer on courts their power to authorize the remedy of attachment before judgment, in certain cases, while the Maryland Rules establish the procedure by which that remedy is invoked and opposed. *Consolidated Constr. Servs., Inc. v. Simpson,* 372 Md. 434, 445, 813 A.2d 260, 267 (2002). CJ § 3–303 sets forth the instances in which the writ may be issued before judgment. Outlaw refers us to subsections (c) and (e) of § 3–303. In context they read:

"(a) *In general.*—An attachment before judgment may issue in any of the instances in this section.

. . . .

"(c) *Action to evade service.*—If a resident individual defendant or an agent authorized to accept process for a corporation has acted to evade service.

. . . .

"(e) *Fraud.*—(1) If the debtor is about to assign, dispose of, conceal, or remove his property or a portion of it from the State with intent to defraud his creditors; or

"(2) If the debtor has done any of these acts, or fraudulently contracted the debt or incurred the obligation which is the subject of the pending action."

There is no evidence supporting either of the grounds to which we have been referred. Thus, we affirm the ruling denying the writ of attachment.

## III

The ruling that "the Defendants are hereby authorized to distribute the settlement proceeds" is not an appealable interlocutory order under CJ § 12–303. Outlaw does not argue that the ruling falls under the collateral order doctrine. Assuredly, the ruling is not a final judgment, if for no other reason than that the breach of contract claim against the Grahams remains extant, and, without implying that certification would be appropriate here, there has been no Rule 2–602 certification. Accordingly, the appeal from the third ruling will be dismissed.

**ORDER OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY DATED DECEMBER 29, 2005, AND ENTERED JANUARY 5, 2006, AFFIRMED IN PART. APPEALS FROM THE REMAINDER OF SAID ORDER DISMISSED.**

**COSTS TO BE PAID BY THE APPELLANT.**